Next case on our call today, agenda number five, is number 127-670. People of the State of Illinois v. Jasus Conway. Are you ready to proceed? Good morning. May it please the Court, Counsel, I'm Assistant Attorney General Michael Cibula on behalf of the people of the State of Illinois. After a bench trial, a defendant was convicted of armed habitual criminal based on eyewitness testimony from a police officer who saw the defendant shoot at a moving car, plus corroborating evidence, including that the defendant was arrested just a few minutes later inside the house. Everyone agrees the shooter walked into. He possessed the keys to the Pontiac sedan. Everyone agrees that the shooter opened up and looked into after the shooting. And he was arrested right next to the distinctive sweatshirt. Everyone agrees the shooter wore. The appellate court made two rulings that are at issue today. First, in a unanimous decision, the appellate court rejected defendant's sufficiency of the evidence claim based on the evidence that I just mentioned. That's the subject of defendant's cross appeal. However, in a two-to-one decision, the appellate majority reversed his conviction because it found that the trial judge had a pro-police bias because he believed the officer's testimony. The majority reached that decision even though everyone agrees defendant did not raise a judicial bias claim. That's the subject of our appeal, and that's where I'd like to begin, if I may. I think the judicial bias claim in this appeal is fairly straightforward and easy to resolve because the parties agree on almost every point. First, the parties agree that the appellate court should not reverse a conviction based on a claim that the defendant did not raise. That's what this court has held many times in cases like People v. Givens. Second, as I just mentioned, the parties agree defendant has never raised a judicial bias claim in this case. So the only issue and dispute at this point is did the majority actually reverse his conviction based on a finding of bias? And when you read the opinion, it's clear that's exactly what the majority did. The majority expressly said that this trial judge had a pronounced bias in favor of police. Among other things, the majority also expressly said that this judge operates under the assumption that police officers are inherently trustworthy. And the majority said that the- Counsel, was the court referring to police officers in general or in this case in particular? The judge here specifically said he was making a ruling with respect to this particular police officer. He was not making a general statement about police officers. And in fact, in his appellate briefs, my opponent said that the judge was very clear. He was making a statement based on the evidence specific to this eyewitness, not about police officers generally. Did he talk about the officer's credibility with respect to his testimony or that this is just a more believable police officer than the other witnesses? What exactly did he say? The judge, and I think I have to emphasize even now, defendant is not arguing that this judge has a pro-police bias. And this judge did, in fact, when you read the record, when you read the judge's verdict, it's very detailed and lengthy, seven pages. The judge carefully went through all the evidence and explained exactly why he credited this testimony, exactly why he believed this eyewitness. For example, he noted that he obviously had the opportunity to hear live testimony from this witness, said that he testified very credibly, held up well under, frankly, aggressive cross-examination. He also noted that this shooting happened in the middle of the day, broad daylight. Nothing obstructed the eyewitness's view of the shooting. And he had sufficient time to make an identification given how long the shooting took. And I think also what's perhaps most important is that the judge in his verdict repeatedly emphasized and circled back to the corroborating evidence, some of which I've just mentioned, you know, being arrested in the house immediately afterwards, next to the sweatshirt, police finding the gun that everyone agrees used in the shooting was in the basement. So when you see this record, when you review the record and the verdict, it's clear this judge is doing exactly what he should do, which is carefully go through the evidence and make a decision based on the evidence, not crediting this witness because he believes that officers in general are more trustworthy, which is, again, an allegation the defendant has never raised. I think, as we mentioned in our brief, it's clear the court reversed this conviction based on the finding of bias. That means it's wrong procedurally. It's wrong on the merits for the reasons I just mentioned. This court has been very clear that it's extremely difficult to prove bias. You have to show actual bias. A suggestion of bias is not enough. This court has repeatedly said that a judge's credibility determination is almost never enough to show bias. After all, it's a judge's job to make credibility determinations, especially in a bench trial like this. And to my opponent's credit, frankly, on pages 57 and 58 of his brief, he acknowledges that we've raised serious concerns about the bias ruling here. He acknowledges this court may share those concerns. He suggests this court could disavow the ruling with respect to bias. And so here, for our appeal, we're asking this court to rule that the appellate court's ruling was wrong procedurally. It never should have reached this issue because the defendant has never raised it. It was also wrong on the merits for the reasons I just mentioned. Counsel was part of the appellate court's rationale for finding bias with this judge. The appellate court's disbelief in the credibility of the officer testifying, he saw something from 150 feet away. That was the basis for the bias ruling. Defendant doesn't claim that the judge was biased for believing that, but it does lead to defendant's cross appeal, and that's the main part of his sufficiency of the evidence claim that he raises on the cross appeal. So I also think the sufficiency claim is fairly simple to resolve. Just if I can quickly recap the evidence that was before the court, it's undisputed that this police officer saw a man shoot at a fleeing car. Then he saw that man walk over to a Pontiac sedan, open it up, look inside, do something there for a moment, and then walk into the house. It's undisputed the defendant was arrested just a couple minutes later inside that house with the keys to the Pontiac in his pocket next to that distinctive sweatshirt, everyone agrees, the shooter wore. Sweatshirt had gunshot powder residue on it, and police found a gun in the basement. And on top of that, the police officer testified that he could visually identify the defendant. That is the shooter. So that's a lot of evidence. That evidence is strong, and it's certainly sufficient under the Jackson standard to sustain defendant's conviction. Now, as I think Your Honor alluded to, defendant really only has one argument on sufficiency. It's a brand-new argument. He did not raise at trial. He is arguing that as a matter of law, you cannot believe this eyewitness because he says scientific studies show that 150 feet is too far away to identify someone. There's a couple major problems with that argument. The first problem is that it's barred because he's relying entirely on arguments and scientific studies he did not present at trial. It's settled law that you cannot introduce new evidence on appeal to support a sufficiency of the evidence case. You're limited to the evidence that was actually presented and admitted at trial. That's what the United States Supreme Court held in Herrera. That's what this court held just last year in People v. Klein. Klein is exactly like this case. The defendant there raised a sufficiency of the evidence claim. He argued that the state's key witness was not reliable. He tried to introduce new evidence on appeal to show that that witness was not reliable, which was evidence about how experts agree fingerprints should be evaluated. And this court said, no, absolutely not. You cannot present new evidence for the first time on appeal to support a sufficiency claim. Now, I know in his final brief, my opponent talks about this court's decision in People v. Heinemann. That is not a sufficiency of the evidence case, so it's completely irrelevant. That case was about whether a lay witness can testify about blood-alcohol conversion factors or whether you need an expert witness to testify about that. It was not a sufficiency claim, so it's irrelevant. So the first problem with his sufficiency claim is it's barred. But even if we're not barred, even if we were to consider these studies, he still has not proven or established his sufficiency claim. This court has been very clear in cases like People v. Gray, People v. Cunningham, that if a defendant raises a sufficiency of the evidence claim and he argues that the state's witness is not reliable, the defendant has to point to evidence that compels the conclusion that no reasonable person could believe that eyewitness. These studies don't come close to doing that. If you look at his studies, the ones that provide data, the people that participated in that study, they basically provide three answers. Some people make correct identifications, some people make incorrect, and some people are not confident enough to try, so they don't attempt an identification. At a distance of about 150 feet, his studies show that somewhere between 30 to 40 percent of people can make a correct identification at 150 feet. So roughly one out of three, two out of five, somewhere around there. That's a lot of people. That statistic doesn't compel the conclusion that no reasonable person could believe the eyewitness, especially when you have the corroborating evidence that I just mentioned, and under the Jackson standard, obviously. You view the evidence in light and most favorable to the prosecution. You make all reasonable inferences in favor of the prosecution. So in addition to being barred, his argument's meritless. If I could just make a few more quick points about... I have a quick question. The appellate court didn't address the standard of review for judicial bias. What do you think the standard of review is? This court has consistently said that judges are presumed to be impartial, that it's a very heavy burden to show that they're biased. You have to show actual bias, and a credibility determination basically can never show bias. So it's very rare to find bias cases. It would typically be just comments, frankly, that are inappropriate or show that the evidence has been prejudged. Sometimes you see something like that. But here, again, I think bias really is an issue because, again, my opponent has not raised a judicial bias claim. In his final brief, he makes a couple points about a sufficiency claim I'd like to just quickly address. One is I think his argument has shifted in a key way. In his opening brief, he argued that as a matter of law, it's just not possible to make an identification at 150 feet, and he was effectively asking his court to adopt cutoff distances for witness reliability, specifically 150 feet. We pointed out in our response to that that his own studies show lots of people can make identifications at this distance. And his own studies expressly say courts should not adopt cutoff distances for reliability. So in his final brief, he backs off from that bit, and he says he's not asking this court to adopt a cutoff distance for reliability. Well, the second he admits that, his sufficiency claim loses because now he's not pointing to any evidence that he thinks compels the conclusion that no one can believe this eyewitness. Two mistakes he makes in his final brief that I would like to just quickly mention. He says a couple times in his final brief that the eyewitness never saw the front of the shooter's face. That's incorrect. The officer specifically testified he saw the front of the shooter's face, pages 82 and 83 of the reported proceedings. The last mistake I wanted to mention is on page 13 of his brief, final brief. He tries to argue that if you run the numbers and look at the data and you eliminate people from the studies who are not confident enough to attempt an identification, that the percentage of correct identifications drops. That's obviously incorrect. That's contrary to just basic logic and basic math. You have some people that make correct identifications. Some make incorrect. Some don't try. If you eliminate the people that don't try, obviously the percentage of correct answers increases. For example, in the Lindsay study that he cites, the percentage of correct responses goes up to about close to 40%. He makes some basic math mistakes, which I won't go through now. But, for example, in the numerator, he excludes people from the target absent group that make correct identifications, but he includes people who make incorrect identifications from that group in the denominator. And he makes similar mistakes with his other study. But that just reinforces the main point. You know, I expect my opponent may come up here in a moment and argue that his numbers are correct and we've misread the studies or something of that nature. That just shows, though, why you don't introduce evidence like this for the first time in appeal. Any disputes that he might have or I might have about how to read the data in the studies, that shows why it has to be introduced at trial. You don't introduce it for the first time in appeal. So unless there are any questions, what we're asking this Court to do is overturn the ruling with respect to bias, affirm the ruling with respect to sufficiency, and defendant has three claims the appellate court did not rule on. He has an evidentiary claim, a crankle claim, and a confrontation cause claim. So the case needs to be remanded back to the appellate court so they can rule on those. Thank you. Counselor Apley. Good morning, Your Honors. May it please the Court. Counsel. I agree that the... Identify yourself. Oh, I'm sorry. I apologize. Gavin Dow for Apley, Jason Conway. Thank you. I would agree that the issue is in the State's appeal. It can be discussed fairly quickly. Certainly the appellate court did find that the trial court exhibited a pro-police bias. That's right there. But the appellate court also found, consistent with our argument, that there was no evidence to suggest that Officer Story had received some kind of training that made the dangers of false identification somehow less concerning than they would be with a different witness. Counsel, was there any evidence regarding what training the officer did have? No, there was no evidence regarding training, Your Honor. I mean, other than the standard... You're saying other than, so what evidence... Allow me to clarify. ...suggested that the officer had some type of training? No specific evidence about training in this, that, or the other. Just the general sort of, I've been a police officer for a long time, I've been assigned here. Was there testimony regarding the fact that that day the position he was in was that he was basically looking out and that he had experience in doing that surveillance? Yes, he was a surveillance officer that day. Did that come in? Yes, he testified he was a surveillance officer that day. At the time of the shooting, he was not conducting active surveillance, Your Honor. He was sitting in his car waiting for his team to regroup. Apparently, where they had been, somebody had started approaching him and he was curious about why this person was there. And so he had left and was sitting at the corner of Monroe and Hamlin just waiting to start over again. And was there testimony regarding how long he had been a surveillance officer, how much experience he had in that? I don't recall specifically about a number of years. 15 years? I'm sorry? Was it 15 years? He was a long-term time officer. I don't recall the specific number of years that he had been serving as a surveillance officer. But, Your Honor, there was no evidence that he had received some sort of training that made him better able to identify somebody than any other person might be. When we instruct jurors on issues of circumstances of identification, we tell them when you weigh the identification testimony of a witness, you should consider all facts and circumstances in evidence, including, but not limited to the following, the opportunity to observe, and then I'd like to address this, the witness's degree of attention at the time of the offense. Here we have testimony that this officer was there for the purpose of surveillance, usually defined as close observation, careful watching. Shouldn't the court be able to take that into consideration, even as a juror would have to take that into consideration? Your Honor, respectfully, I would disagree with the premise that he was there for surveillance because he was not conducting surveillance at the time. Other than that, sure, it's certainly appropriate for the court to consider the degree of attention which the officer was paying, and the officer testified about what he saw, and that is an appropriate consideration. The problem here is that it's not that the trial court said, oh, I think he was paying attention. The trial court said that because he's a trained officer and specific to this officer, the dangers of false identification are just less concerning, and there's no evidence that police officers generally or this officer in particular had received that kind of training. That's the extent of our claim there. What should we do with the finding of judicial bias? I think the first thing you need to do, Your Honors, you need to determine why was this reversed. Why did the appellate court reverse? And the majority, the appellate court majority addressed this specifically only in paragraph 1 of its opinion, where it said, we hold that the trial court's unsupported assertions about the special perceptual powers of police officers require reversal and remand for a new trial. Now ---- Counsel, is that the basis of the statement of that there was judicial bias? I'm still trying to figure out what exactly constituted the core of the judicial bias that the appellate court found here. Can you articulate that for me? The way that I read the opinion, Your Honor, my understanding is that having seen that there was no evidence of this kind of training, the majority inferred that the basis for that finding was an internal bias on the part of the trial court. Now, it's not our position in this court that we have a biased prior effect here. We think that it's a fair inference that maybe there's a bias there, and so what we would suggest that you could do with that, Your Honor, is that you could affirm the appellate court decision not only for reversal and remand for a new trial, but also to reassign it to a different judge. But that's, I think the ---- But maybe. Obviously, we have a number of cases that have talked about the caution that a court should exercise in finding impartiality or lack of impartiality or bias. So you're saying that maybe it's there and we should accept that? Or what else should we do about it if, as you say, it's not proven to the extent that we've seen in other kinds of cases when there's been a specific finding of judicial bias? I think what we're saying, Your Honor, is that it is appropriate for the suggestion of bias. That's an appropriate justification for a reviewing court when it's reversing and remanding for a new trial to order reassignment. You know, we ---- So whenever there's a suggestion of bias, we should reassign it to another judge, regardless of whether the evidence suggests that or is clear? I'm still trying to figure out what is the core evidence that suggests or solidifies the appellate court's opinion that there was judicial bias here. And I've asked you that question. I'm still waiting for the answer. Well, I apologize if I haven't answered that. I'll give it a go. The ---- My understanding is the appellate court drew an inference from the fact that the trial judge made an unsupported finding that the reason for that finding was there was a pro-police bias, that the trial court internally had a pro-police bias. And that's why the court made this unsupported finding about officer stories training. That's my understanding of it. And I don't want to get too deep into this because this is not, for us, not a terribly important issue. We didn't ask for the appellate court to do it. It probably is for the judge. And we're going to have to discuss it. So we're asking your help. Absolutely. So what I would say is that I think under this Court's rules and the way the appellate court has interpreted them, an appearance of bias is a perfectly appropriate basis for reassigning on remand. When there's an appearance of bias that's not specifically supported by evidence, so that's somebody's opinion that there was bias, is that enough for us to say, oh, well, someone believes that there was bias here, so let's reassign it to another judge? Is that now going to be the standard? I mean, that sounds to me like that's what you're suggesting. That is my understanding of how the appellate court has interpreted this Court's rules. Obviously, this Court disagrees with that and thinks it ought to be a higher standard. I mean, you can do that. Absolutely, you can. The concerns that you have when you're making a substitution of judge motion in the trial court about judge shopping, not quite the same once you have a final disposition and you're on appeal. We know the Federal courts will sometimes reassign a case based on an appearance of impropriety, an appearance of bias. And that, it makes sense. It makes sense that the court has the discretion to do that. Whether that was properly exercised here, our position would be that it was. But, again, that's not, for us, a very major concern. Our primary concern is what the appellate court did find, which was that there was no evidence to support the finding that Officer Story had received this training. That was the basis for reversal. That was proper. That should be affirmed. So you keep saying that there was no evidence that the officer received this training. What would it look like if it were done properly? What should have happened to establish that the officer received the training so that the trial court's finding would be supported? It would be something along the lines, I think, of, for example, Officer Story, have you attended such and such conference where they did this? Have you internally, with the Chicago Police Department, had training to enhance your ability to make an accurate identification? Now, I think there's a fair question, Your Honor, about whether that's actually something that's possible to do. The amicus brief, I think, addresses that to a certain extent. But it would be something along those lines. And we don't have that here. So it's insufficient that the officer testified about his time as an officer, time working in surveillance. That's insufficient? To show that the officer is better at making accurate identifications than other people are. But is that what the trial court found? Yes. Yes, Your Honor. That is what the trial court found. But you talk about the studies, which, of course, did not come in at the trial court level, but just talking about people in general and their ability to identify at the distance of 150 feet. Isn't what the trial court did basically say that this officer has, you know, been involved in surveillance for a number of years? As an officer does this? I mean, I know the trial court didn't say these exact words, but isn't the thinking that this officer has this experience, has been an officer for a number of years, works specifically in surveillance. And so I'm taking that into consideration. But I don't think the trial court necessarily found that because that he had some special ability. Because we know that just a lay person can potentially identify someone at 150 feet, right? Not reliably, Your Honor, but yes, it's possible. It's been done? Yes. And so we have a police officer with multiple years of experience working in surveillance. Is it inappropriate for the trial court to determine that that person might have even better capabilities or more likely to be reliable in that circumstance? I think the answer to the question is no, but it's a little complicated. There are aspects of that that, for example, the state talks a lot about the officers paying attention. Well, we have a police officer here. And it is fair to infer, as the cases have said, that the officer is going to be paying closer attention when they're aware that there's a crime going on. And if somebody has done that for a long time, that might provide a fair basis for inferring that they're, in fact, paying attention. But paying attention is only one ingredient when you're looking at how reliable an identification might be. And the problem here wasn't was he distracted. I mean, to a certain extent, yeah, there's gunfire going around. But that's a fairly minor issue compared to the distance here. And there's just no evidence to support the notion that the danger that he's going to get this wrong is somehow mitigated by training that he has received because there's no evidence that he received any such training. But, counsel, the officer's identification of the defendant physically, that wasn't the only evidence that was used. There was the sweatshirt that had, I guess it was a specific color. The putting the item into the car and coming and clearly he had the keys to the car. You know, finding the gun in the house. It's not, it wasn't in his possession, but he was in the house with it. And it was the gun that was used to fire into the car, the passing car. Those are other things in addition to the officer's identification is just one factor. You know, I don't think that the State would have had a sufficient case here with the identification. So that other evidence is there. And some of it is probative to a very minor extent. Some of it is not very probative at all. And I'd be happy to walk through it. But the ---- Which part of it is not probative? I'd be interested in hearing that. So the evidence says that when Officer Story enters the building, there are a large number of men, women and maybe children there. We don't know how many. He doesn't say specifically how many. But the fact that the gun is found in the building, the fact that the shooter ran into the building, there's nothing about that that differentiates Jason Conway, my client, from anybody else that's in there. So that doesn't help figure out who could the shooter be. Now, the sweatshirt, that gets a little bit closer. Because the sweatshirt is definitely the one the shooter used. And that's what the officer testified to. And under Jackson, we're going to accept that. The sweatshirt also has the gunshot residue on it. But it's not being worn by my client. It's just near him. We don't know how it got there. We don't know how long it's been there. We don't know how long Jason Conway was there. Because Officer Story wasn't the first person to come in. And we have no information about people moving around inside the building after the first police officers entered it. So all there is is the fact that the sweatshirt is there. And whatever minor probative value that might have is undermined by the fact that the sweatshirt has gunshot residue on it, But didn't the officer identify the defendant as the person that he saw go open the car and put something in and then close it again? And the car keys were found on that particular person. Yes, that's right, Your Honor. So we have to suppose that maybe it was another person that had the car keys and then gave it to the defendant? Well, no, because we don't actually have any evidence that the keys were used to open and close the car. What Officer Story testified was somebody opened the door and closed the door, took a couple steps away, then went back in and out of it. That's it. We don't know that the keys were used to unlock it. We don't know that the lights flashed because somebody used the fob on it. All we know is that this person opened and closed the car door of the vehicle that was essentially right in front of them. The spent bullet casings, I believe, were found more or less at the rear bumper of this Pontiac. And so the key connects Mr. Conway to the car. We don't know why he has that key. There's no evidence that it's actually even his car. It's registered to him or a family member or anything. All there is really is the key. But sure, that connects him to the car to a certain extent. And then the shooter obviously has some connection to the car. But it's not a connection through the keys. It's just a connection to the car. And so that would be something that perhaps is probative, but not enough to rationally allow a trier of fact to find that there's no reasonable doubt about guilt. And when it comes to sufficiency, this case is really about that reasonable doubt standard. In Jackson, the U.S. Supreme Court said, quoting Justice Harlan's concurrency in In re Winship, I believe, that the reasonable doubt standard requires the trier of fact to reach a subjective state of near certainty. So whoever it is that the trier of fact has to be able to say, essentially, any doubt that I might have about this, this isn't worth considering. Now you've cited a whole series of studies about eyewitness identification. None of that was presented to the trial court. That's right. Why are you doing that here? What are we supposed to do with all of this information that you've given to us that was not presented at the trial? You're supposed to use it just essentially to inform how you think about what would be rational to find and what would be rational not to find. And is that how the appellate process works? That we were to use new studies that have not been weighed or tried or explored? How do we know they're reliable? How does an appellate court do that, a reviewing court do that? Well, reviewing courts have, as we've laid out in the brief, do this all the time with respect to formulating legal rules and exercising legal judgment. The distinction, I think, is that because this wasn't in evidence, you don't use it to – it's not a fact of the case, essentially. You take the facts the case has given. And your job at this point is just to decide, okay, based on what that evidence was, what could rationally be concluded here? And, you know, the studies just back up what is essentially a matter of common sense. At a distance of 150 feet, an identification might be right. But it is not so likely to be right that you can rely on that as proof beyond a reasonable doubt. That doesn't give you that subjective state of substantial certainty, either individually or any rational person, cannot reach that subjective state in your certainty based on that distance. How does that play with the concept that we have to look at the evidence and the light most favorable to the state? I mean, isn't that what we're required to do? Yes, Your Honor. And what that means is that we're going to accept what Officer Story said as essentially honest. This is what he saw. He's not lying about what he saw. He's not, as counsel suggested during the argument to the trial court, engaging in a white lie or a little fib because he's on the side of the angels. We're going to assume he's acting in good faith. That's how you look at the light most favorable, the evidence and the light most favorable to the state. But even if you look at it that way, even if he thinks he's right, there's just common sense. And the studies back it up. But common sense tells you there's just too great a chance that he's not right for that to satisfy the reasonable doubt standard, speaking rationally. And the other – I see my time is up. Thank you very much, counsel. All right.  Thank you. Just a few quick points, if I may. On the issue of bias, I think one of the questions was what was the basis for the bias ruling. It was because the appellate court looked at basically studies and said it's impossible to make an identification from 150 feet away, and only a biased judge would think a police officer can make an identification 150 feet away. The appellate court's ruling had nothing to do with the evidentiary claim he raised. It, again, was based entirely on the bias ruling. We know that for all the comments about calling – saying the judge had a pronounced bias in favor of police, citing people versus McDaniels, which is a case that holds that trial before a biased judge is structural error that automatically requires a new trial. So – and also if you look at the dissent, the dissent expressly says they're reversing it because they found the judge's bias. So the ruling is very clear that bias was the basis for the ruling, and that the appellate court never reached the evidentiary claim that my opponent was talking about, just as it didn't reach the Crankle claim or the Confrontation Clause claim. So it needs to be remanded for those considerations. On the issue of the substitution order, the standard is very clear. This court held an eye-chainer 20 years ago in Hughes a year ago. You have to show actual bias to substitute a judge on remand. This court has been very clear a suggestion of bias or an inference of bias is not enough to substitute a judge on remand. The sufficiency claim, my opponent argued that these studies back up common sense, that it's somehow impossible to make an identification at 150 feet. If one out of three or two out of five people can make identifications at 150 feet, I don't know how that shows that it's common sense that they can't. And if he really was only making a common sense argument, he wouldn't be trying to introduce scientific studies. So unless there are any other questions, thank you.